IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18 CV 261

| | |
|---|---|
| DAVID A. HULLENDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM AND |
| ) | RECOMMENDATION |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court on the parties' cross motions for summary judgment (Docs. 11, 13). The Motions have been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). The issues have been fully briefed, and the matter is now ripe for ruling. Following a review of the record, the parties' briefs, and relevant legal authority, the undersigned respectfully recommends that Plaintiff's motion for summary judgment be denied and that the Commissioner's motion for summary judgment be granted.

**I.    Procedural History**

On October 18, 2013, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits.[1] (Transcript of Administrative Record ("T")

---

[1] "Protective filing refers to the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing allows an individual to have an earlier application date than the date the application is signed." Hess v. Colvin, No. 3:12-CV-1907, 2014 WL 901144, at *1 n.3 (M.D. Pa. Mar. 7, 2014).

23.)  Plaintiff also protectively filed a Title XVI application for supplemental security income on the same date.  (T. 23.)

In both applications, Plaintiff alleged a disability onset date of March 31, 2013.  (T. 23.)  Plaintiff's claims were denied initially on May 1, 2014, and upon reconsideration on March 9, 2015.  (T. 23.)

Plaintiff filed a written request for a hearing on May 1, 2015.  (T. 23.)  A hearing was held on April 14, 2017, in Charlotte, North Carolina.  (T. 23.)  Plaintiff appeared and testified.  (T. 23.)  Ellen Levine, a vocational expert ("VE"), also appeared and testified.  (T. 23.)  At the time of the hearing, Plaintiff was represented by attorney Lindsey Robison.  (T. 23.)

On July 17, 2017, the Administrative Law Judge ("ALJ") issued an unfavorable decision.  (T. 23-35.)  The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (T. 1-4.)

On May 17, 2018, Plaintiff filed the instant action seeking review of the Commissioner's final decision.  See (Doc. 1).

## II. Standard for Determining Disability

An individual is disabled for purposes of receiving disability payments if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  The Commissioner undertakes a five-step inquiry to determine whether a claimant

is disabled. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Under the five-step sequential evaluation, the Commissioner must consider each of the following: (1) whether the claimant has engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or exceed the severity of one or more of the listing of impairments contained in Appendix I of 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age, education, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520, 416.920; Mastro, 270 F.3d at 177; Johnson, 434 F.3d at 653 n.1.

At the first two steps of the sequential evaluation, the burden is on the claimant to make the requisite showing. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If a claimant fails to satisfy his or her burden at either of these first two steps, the ALJ will determine that the claimant is not disabled, and the process comes to an end. Mascio v. Colvin, 780 F.3d 632, 634-35 (4th Cir. 2015). The burden remains on the claimant at step three to demonstrate that the claimant's impairments satisfy a listed impairment and, thereby, establish disability. Monroe, 826 F.3d at 179.

If the claimant fails to satisfy his or her burden at step three, the ALJ must still determine the claimant's RFC. Mascio, 780 F.3d at 635. After determining the claimant's RFC, the ALJ proceeds to step four in order to determine whether the claimant can perform his or her past relevant work. Id. The burden is on the claimant to demonstrate that he or she is unable to perform past work. Monroe, 826 F.3d at 180. If the ALJ determines that a claimant is not capable of performing past work, then the ALJ proceeds to step five.

3

<u>Mascio</u>, 780 F.3d at 635.

At step five, the ALJ must determine whether the claimant can perform other work. <u>Id.</u> The burden rests with the Commissioner at step five to prove by a preponderance of the evidence that the claimant can perform other jobs that exist in significant numbers in the national economy, considering the claimant's RFC, age, education, and work experience. <u>Id.</u>; <u>Monroe</u>, 826 F.3d at 180. Typically, the Commissioner satisfies her burden at step five with the testimony of a VE, who responds to a hypothetical question from the ALJ that incorporates the claimant's limitations. <u>Mascio</u>, 780 F.3d at 635; <u>Monroe</u>, 826 F.3d at 180. If the Commissioner satisfies her burden at step five, then the ALJ will find that the claimant is not disabled and deny the application for disability benefits. <u>Mascio</u>, 780 F.3d at 635; <u>Monroe</u>, 826 F.3d at 180.

## III. The ALJ's Decision

In his July 17, 2017 decision, the ALJ found that Plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. (T. 23-35.) In support of that conclusion, the ALJ made the following findings:

(1) The claimant meets the insured status requirements of the Social Security Act through June 30, 2017.

(2) The claimant has not engaged in substantial gainful activity since March 31, 2013, the alleged onset date (20 C.F.R. §§ 404.1571 <u>et</u> <u>seq.</u> and 416.971 <u>et</u> <u>seq.</u>).

(3) The claimant has the following severe impairments: COPD, lumbar degenerative disc disease, obesity,[2] and depression (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

---

[2] In July of 2014, Plaintiff weighed 220 pounds and was 5'3" tall. (T. 30.)

4

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

(5) The claimant has the RFC to perform light work[3] (lift and carry 20 pounds occasionally and 10 pounds frequently, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b)), except that he should have a sit/stand option with the ability to change positions once per hour. He could occasionally bend, squat, crawl, crouch, kneel, and balance. He is capable of simple routine repetitive tasks in a low stress and low production environment. He can have occasional exposure to people. He can have occasional exposure to chemicals, dusts, and similar irritants.

(6) The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

(7) The claimant was born on September 22, 1970, and he was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 C.F.R. §§ 404.1563 and 416.963).

(8) The claimant has a limited education, and he is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See Social

---

[3] The regulations define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as a loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

Security Ruling ("SSR") 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from March 31, 2013, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

(T. 23-35.)

## IV. Standard of Review

Title 42, United States Code, Section 405(g) provides that a plaintiff may file an action in federal court seeking judicial review of the Commissioner's denial of social security benefits. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). The scope of judicial review is limited in that the district court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); accord Monroe, 826 F.3d at 186. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig, 76 F.3d at 589 (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id.

When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that he is not disabled

6

is supported by substantial evidence in the record, and whether the ALJ reached his decision based on the correct application of the law. Id.

**V.      Analysis**

   **A.     The ALJ evaluated the medical opinion evidence from Dr. Witt and Ms. Campbell properly.**

Plaintiff argues that the ALJ failed to consider the medical opinion evidence from Plaintiff's treating physician and his treating mental health nurse properly. Pl.'s Mem. (Doc. 12) at 9-18.

It is an ALJ's responsibility to determine the weight of the evidence and resolve conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up some 'specious inconsistencies,' or has failed to give a sufficient reason for the weight afforded a particular opinion." Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015) (internal citations omitted); see also 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6) (providing an example of other factors to be considered when weighing a medical opinion); 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

Treating sources are generally given controlling weight with respect to the nature and severity of a claimant's impairment. 20 C.F.R. §§ 404.1527(c), 416.927(c). When,

7

Case 3:18-cv-00261-MOC-WCM    Document 16    Filed 05/24/19    Page 7 of 20

however, a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record," it is not entitled to controlling weight. SSR 96-2p, 1996 WL 374188, at *4. In that case, the treating source's opinion must be weighed and evaluated pursuant to the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)(i)-(c)(6), 416.927(c)(2)(i)-(c)(6). Ivey v. Berryhill, No. 3:18-CV-075-DCK, 2019 WL 1413756, at *7 (W.D.N.C. Mar. 28, 2019); Bush v. Berryhill, No. 1:17CV872, 2019 WL 699349, at *3 (M.D.N.C. Feb. 20, 2019).

### 1. Cynthia Witt, M.D.

On August 9, 2016, Dr. Witt completed a checklist, fill-in-the blank physical assessment (T. 1674-75), which included the following findings:

- Plaintiff has been diagnosed with COPD, chronic low back pain with radiculopathy, and osteoarthritis. (T. 1674.)
- Plaintiff's symptoms constantly interfere with his attention and concentration required to perform simple, work-related tasks. (T. 1674.)
- Plaintiff's medications cause dizziness and drowsiness. (T. 1674.)
- Plaintiff would need to recline or lie down during a hypothetical 8-hour workday in excess of the typical 15-minute break in the morning, 30-to-60-minute lunch break, and the typical 15-minute break in the afternoon. (T. 1674.)
- Plaintiff can walk less than one city block without rest or significant pain. (T. 1674.)
- In an 8-hour workday, Plaintiff can sit for 2 hours and stand/walk for 1 hour. (T.

1674.)

- Plaintiff will need to take unscheduled breaks during an 8-hour workday. (T. 1674.)

- Plaintiff will need unscheduled breaks every 1-2 hours, and the breaks will last 15-20 minutes. (T. 1674.)

- Plaintiff can lift less than 10 pounds or 10 pounds occasionally, but he can never lift 20-50 pounds. (T. 1674.)

- Plaintiff has no limitations in repetitive reaching, handling, or fingering. (T. 1674.)

- Plaintiff is likely to be absent from work more than 4 times a month. (T. 1675.)

- Finally, Plaintiff's impairments are reasonably consistent with the symptoms and functional limitations described in the instant physical assessment. (T. 1675.)

The ALJ considered and gave "little weight" to Dr. Witt's August 9, 2016 physical assessment for several reasons.[4] (T. 30.) First, the ALJ noted that Dr. Witt's records do not support the severity of the limitations she found. (T. 30.) According to the ALJ, Dr. Witt's exams revealed moderate and generalized tenderness of the lumbosacral spine, negative straight leg raising tests, and no other findings (Ex. 40F). (T. 30.) Second, the ALJ noted the conservative nature of care Plaintiff had received over the years and how it was inconsistent with Dr. Witt's findings. (T. 30.) Plaintiff had received a few injections, had not followed a full course of physical therapy, and had not seen a pain management

---

[4] "[C]heck-box or fill-in-the-blank forms 'are entitled to little weight because they are not supported by objective evidence in the records as required under 20 C.F.R. §§ 404.1527, 416.927.'" King v. Berryhill, No. 3:18-cv-00001-RJC, 2019 WL 1317732, at *3 (W.D.N.C. Mar. 22, 2019) (quoting Shannon v. Berryhill, 1:17-CV-00066, 2018 WL 1567368, at *4 (W.D.N.C. Mar. 30, 2018)).

9

specialist in a couple of years. (T. 30.)

Also on August 9, 2016, Dr. Witt wrote a short letter, which stated:

RE: David A Hullender, DOB 9/22/70

Above is permanently unable to work due to a combination of mental & physical health problems. Thank you in advance for your cooperation. Do not hesitate to call me if you have any questions.

(T. 1672.)

The ALJ noted that Dr. Witt's letter was conclusory in nature. (T. 30.) See 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). In addition, the ALJ explained that the disability determination is a legal question that is left to the province of the Commissioner, not a doctor. (T. 30.) See 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability.").

The undersigned concludes that the ALJ's evaluation of Dr. Witt's opinions is supported by substantial evidence and was reached through application of the correct legal standard, and therefore should not be disturbed.

### 2. Novelett Campbell, APRN

Plaintiff argues that the ALJ's observation that Nurse Campbell was an "other source" medical opinion was irrelevant. Pl.'s Mem. (Doc. 12) at 14-15. In particular, Plaintiff contends that Nurse Campbell's opinion was not offered to provide diagnoses for determining whether his impairments were medically determinable. Id. Plaintiff further

10

argues that the ALJ's finding that Nurse Campbell did not offer evidence in support of her explanation is contrary to the record and case law. Id. at 15.

Under SSR 06-3p,[5] the term "medical sources" refers to two groups of sources-- "acceptable medical sources" and "other health care providers who are not 'acceptable medical sources.'" SSR 06-3p, 2006 WL 2329939, at *1 (Aug. 9, 2006). Licensed physicians (medical and osteopathic doctors), licensed or certified psychologists, and licensed optometrists are among those medical sources considered to be "acceptable medical sources." Id. Medical sources that are not considered to be "acceptable medical sources" include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. Id. at 2.

The distinction between medical sources that are "acceptable medical sources" and other medical sources is required for three reasons: (1) "acceptable medical sources" are needed to establish medically determinable impairments; (2) only "acceptable medical sources" can provide medical opinions; and (3) only "acceptable medical sources" can be treating sources whose opinions are entitled to controlling weight. Id.

On June 29, 2016, Nurse Campbell completed a check-box form Mental Capacity Assessment for Plaintiff. (T. 1668-70.) Nurse Campbell opined as follows:

- Plaintiff has marked limitations in understanding and memory, marked limitations in sustained concentration and persistence, moderate limitations in social

---

[5] SSR 06-3p has been rescinded, and the rescission is effective for claims filed on or after March 27, 2017. 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017). Plaintiff's claims were filed before the effective date of the rescission; therefore, SSR 06-3p applies here.

interaction, and marked limitations in adaptation. (T. 1668-69.)

- "Plaintiff is not compliant with medications at all times therefore he experiences racing thoughts, decrease[d] concentration and motivation."[6] (T. 1668.)
- Alcohol or other substances did not impact her assessment. (T. 1670.)
- Plaintiff can manage benefits in his own best interest. (T. 1670.)

The ALJ noted that Nurse Campbell is not an "acceptable medical source" and did not give great weight to her June 29, 2016 Mental Capacity Assessment, as only acceptable medical sources can give medical opinions to the Social Security Administration, be considered treating sources, and be considered for controlling weight. (T. 32.).

The opinion of a medical source that is not an "acceptable medical source" may still be considered and given "great weight" when considered in the context of the record as a whole. Cf. Stevens v. Colvin, No. 1:14CV350, 2015 WL 5254299, at *4 (M.D.N.C. Sept. 9, 2015) (citing SSR 06-03p) (nurse practitioner). However, here, the ALJ found that Nurse Campbell failed to offer any supporting evidence or explanations for her opinions. (T. 32.)

The ALJ's conclusion was appropriate. See 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly signs and laboratory findings, the more weight we will give that

---

[6] Citing 20 C.F.R. §§ 404.1530 and 416.930, the ALJ found that Plaintiff had demonstrated only variable compliance with prescribed medications. (T. 32.) When evaluating the credibility of a claimant's subjective complaints, an ALJ is not precluded from considering whether the claimant complied with his prescribed treatment. See Preston v. Heckler, 769 F.2d 988, 990 n.1 (4th Cir. 1985) (recognizing that noncompliance provides a basis for denying benefits).

12

opinion."). Plaintiff concedes that Nurse Campbell rendered her June 29, 2016 opinion just seven days after she initiated treatment with him and after only one session together. See Pl.'s Mem. (Doc. 12) at 16 (citing T. 1754)). During that one session, Nurse Campbell did not note difficulties in attention or concentration and found no memory impairments (T. 1754.) However, in Nurse Campbell's RFC assessment, she found marked difficulties in memory and concentration (T. 1668-69.)

**B.     The ALJ properly assessed Plaintiff's mental RFC.**

Plaintiff argues that the ALJ's RFC assessment was not supported by substantial evidence, Pl.'s Mem. (Doc. 12) at 22, and that under Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015), the ALJ was required to accommodate all of his limitations in the RFC. Id. at 19-21.

RFC is defined as "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). SSR 96-8p, 1996 WL 374184 (July 2, 1996), provides that an ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." Id. at *7. In formulating an RFC, an ALJ is not required to discuss every piece of evidence. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). An ALJ is, however, required to build a logical bridge from the evidence of record to his conclusion. Monroe, 826 F.3d at 189; see also Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000). With respect to the function-by-function analysis, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his other work-related abilities on a

13

function-by-function basis[.]" SSR 96-8p, 1996 WL 374184, at *1.

In Mascio, the Fourth Circuit Court of Appeals held that moderate deficiencies in concentration, persistence, or pace cause work-related deficits in staying on task. 780 F.3d at 638. Consequently, an ALJ may still issue an RFC that does not include limitations staying on task for a concentration, persistence, or pace impaired claimant, but if the ALJ does so, an explanation is required. Id. In pertinent part, the court in Mascio held:

> Perhaps the ALJ can explain why [the plaintiff's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [the plaintiff's] residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect [the plaintiff's] ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ gave no explanation, a remand is in order.

Id. (internal citation omitted and emphasis added).

Here, the ALJ found as follows: Plaintiff reported that he watched television and was able to do this well, but he could not pay attention very long or follow written or spoken instructions due to distracting thoughts. (T. 26.) Plaintiff's mother stated that she had to remind him to take his medications. (T. 26.) Plaintiff has reported difficulty concentrating, and Nurse Campbell reported that Plaintiff was not complaint with his medications, which caused him to experience racing thoughts, decreased concentration, and motivation. (T. 26.) With respect to adapting or managing oneself, Plaintiff has experienced moderate limitations. (T. 26.) Plaintiff noted that his depression influenced his motivation to bathe, and Plaintiff previously attempted suicide when he was stressed. (T. 26.) Plaintiff is able to drive a car and can go out alone. (T. 26.) Plaintiff's mom stated that Plaintiff took her shopping for 2 to 3 hours every week and to appointments. (T. 26.)

14

Finally, Plaintiff attended 12-step meetings 5 days a week for a few months at Phoenix Counseling. (T. 26.)

Based on this information, the ALJ concluded that Plaintiff had moderate limitations with respect to concentrating, persisting, or maintaining pace, (T. 26.)

Consequently, the ALJ had two choices: (1) limit the RFC finding to account adequately for the limitations, or (2) adequately explain the decision to not further limit Plaintiff's RFC. See Rivera v. Berryhill, No. 3:17-CV-00376-GCM, 2019 WL 355536, at *2 (W.D.N.C. Jan. 29, 2019).

The ALJ chose the first option and concluded that Plaintiff was capable of simple, routine, and repetitive tasks in a low stress and low production environment and that Plaintiff could work with only occasional exposure to people. (T. 26-27.)

This analysis adequately accounted for Plaintiff's moderate limitation in concentration, persistence or pace. See Jarek v. Colvin, 2015 WL 10097516, at *5 (W.D.N.C. Sept. 4, 2015), memorandum and recommendation adopted,, 2016 WL 626566 (W.D.N.C. Feb. 16, 2016), aff'd, 672 F. App'x 332 (4th Cir. 2017) (moderate limitation in concentration, persistence, or pace was adequately addressed by "limitation to simple, routine, repetitive tasks not at an assembly line pace"); Hubbard v. Berryhill, No. 3:17-CV-677, 2018 WL 3744017 (W.D.N.C. Aug. 7, 2018) (ALJ's analysis of plaintiff's RFC was acceptable where ALJ limited plaintiff to simple directions, short and simple tasks, and occasional interaction with the general public and coworkers).

### C. The ALJ's reliance on the VE's testimony was appropriate.

Plaintiff argues that an ALJ must identify and resolve apparent conflicts between

vocational testimony and the Dictionary of Occupational Titles ("DOT").[7] Pl. Mem. (Doc. 12) at 23-27. Plaintiff argues that the ALJ erred by failing to define what he meant by "low production." Id. at 25. Plaintiff contends that the jobs identified by the VE appear to conflict with this limitation. Id. at 26.

An ALJ has an affirmative duty to elicit an explanation from a VE regarding any "apparent unresolved conflict" between the VE's testimony and the DOT. SSR 00-4p, 2000 WL 1898704 at *2 (Dec. 4, 2000); Pearson v. Colvin, 810 F.3d 204, 208 (4th Cir. 2015).

SSR 00-4p provides:

> Occupational evidence produced by a VE . . . generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the [ALJ's] duty to fully develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency.
> Neither the DOT nor the VE . . . evidence automatically "trumps" when there is a conflict. The [ALJ] must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.

Id.;

In the instant case, the ALJ asked the VE whether an individual of Plaintiff's age and vocational profile, with the limitations that would be included in the RFC, would be able to perform work existing in significant numbers in the national economy. (T. 991.)

---

[7] The DOT, published by the Department of Labor, gives detailed physical requirements for a variety of jobs. Morgan v. Berryhill, No. 16-1141, 2017 WL 4280787, at *3 n.4 (D. Md. Sept. 27, 2017). While information found in the DOT is not conclusive evidence on the existence of jobs in the national economy, it can be used to create a rebuttable presumption on the matter. Id.

The VE responded with three representative jobs that such an individual could perform: laundry folder, inspector and hand packager, and electronics worker. (T. 991-92.) The VE explained that her testimony was fully consistent with the DOT, and while there were elements in the ALJ's hypothetical that were not included in the DOT, her testimony regarding the vocational effects of those elements was based on her training, experience, and knowledge of how jobs are performed in the labor market. (T. 992.)

Plaintiff argues that the jobs identified by the VE "appear, based on the DOT descriptions, to be jobs with high production requirements or a high production pace." Pl.'s Mem. (Doc. 12) at 25. However, Plaintiff has provided no explanation for this assertion.[8]; see Martinez v. Berryhill, No. 3:17-CV-186, 2018 WL 709971*4. (W.D.N.C Feb. 5, 2018) (court could not agree that "being involved with the production of any good in any way implies a production rate or pace"). Moreover, Plaintiff did not object to this testimony at the April 14, 2017 hearing. See (T. 992.).

Next, Plaintiff argues that the identified jobs "appear to conflict" with the sit/stand option included in his RFC. Pl.'s Mem. (Doc.12) at 26. Plaintiff contends that a "plain reading" of the DOT definitions create a conflict with a sit/stand option. Id. In the alternative, Plaintiff argues that the DOT is "silent" with respect to the sit/stand option. Id.

---

[8] In pertinent part, Plaintiff summarily argues:

> Defendant asserts that there are no apparent conflicts and that the ALJ properly relied on the vocational witness testimony. There are, however, apparent conflicts between the descriptions of jobs relied on at Step Five and the vocational witness testimony and remand is required to resolve these conflicts.

Pl.'s Reply (Doc. 15) at 6.

17

At the April 14, 2017 hearing, the VE testified that an individual with Plaintiff's RFC could perform the following light exertional positions: laundry folder, inspector and packager, and electronics worker. (T. 991-92.) When the ALJ asked the VE whether her testimony was consistent with the DOT, she responded, "It is, Your Honor, but what's not covered by the DOT is based on my training, education, experience and knowledge of how jobs are performed in the labor market." (T. 992.)

The ALJ found that Plaintiff could perform the requirements of three representative occupations: (1) laundry folder, DOT code 369.687-018; (2) inspector and hand packager, DOT code 559.687-074; and (3) electronics worker, DOT code 726.687-010. (T. 34.)

Plaintiff is correct that the DOT is "silent" on the sit/stand option, however, this creates no conflict. See, e.g., Zblewski v. Astrue, 302 F. App'x 488, 494 (7th Cir. 2008) ("Because the DOT does not address the subject of sit/stand options, it is not apparent that the [sit/stand] testimony conflicts with the DOT."); Cogar v. Colvin, No. 3:13-cv-380-FDW, 2014 WL 1713795, at *7 (W.D.N.C. Apr. 30, 2014) ("Because the DOT is silent on the availability of the [sit/stand] option, it cannot be said that a VE testifying about the option would be in conflict with the DOT.").

Plaintiff has failed to show that he is entitled to relief on this assignment of error.

## VI. Recommendation

Considering the foregoing, the undersigned **RECOMMENDS** that Plaintiff's motion for summary judgment (Doc. 11) be **DENIED**, and that the Commissioner's motion for summary judgment (Doc. 13) be **GRANTED**.

Signed: May 24, 2019

W. Carleton Metcalf
United States Magistrate Judge

## **Time for Objections**

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).